■ VERNA B. NEILSON, Individually and as a Shareholder of 6D FARM CORPORATION, Respondent, v 6D FARM CORPORATION et al., Defendants, and BENEDICT DAIRY FARMS et al., Appellants. [998 NYS2d 397]—

In an action for an accounting and to recover damages for breach of contract, the defendants Benedict Dairy Farms and the Estate of Elena Duke Benedict appeal, as limited by their brief, from (1) so much of an order of the Supreme Court, Westchester County (Jamieson, J.), dated January 24, 2013, as denied

their motion for leave to file a late answer, for leave to file an amended answer to add additional counterclaims, and for summary judgment dismissing the fifth cause of action, which alleged breach of contract, and granted that branch of the plaintiff's cross motion which was to authorize the defendant 6D Farm Corporation to wind up the business of the defendant Benedict Dairy Farms, and (2) so much of an order of the same court dated May 8, 2013, as granted that branch of the plaintiff's motion which was to direct their counsel to turn over all books, records, and assets belonging to the defendant Benedict Dairy Farms to the defendant 6D Farm Corporation.

Ordered that the orders are affirmed insofar as appealed from, with one bill of costs.

The defendant 6D Farm Corporation (hereinafter 6D) and Elena Duke Benedict (hereinafter Mrs. Benedict), were equal partners in the defendant partnership, Benedict Dairy Farms (hereinafter BDF), which was dissolved, by agreement, in 1998. Mrs. Benedict was the managing general partner of BDF, and undertook the winding up of BDF's business following dissolution.

The plaintiff, one of Mrs. Benedict's daughters and a shareholder of 6D, has been engaged in various litigation with BDF and Mrs. Benedict since 1997. In 2005, the plaintiff commenced this action seeking, inter alia, an accounting of BDF's assets and to recover damages for Mrs. Benedict's alleged breach of a 1997 agreement to provide 6D with information about BDF's business transactions. In 2007, the Supreme Court granted the cross motion of Mrs. Benedict to dismiss the complaint in its entirety. On appeal from that order, this Court reinstated only the fifth cause of action, which alleged, inter alia, a breach of contract based on a number of transactions in which BDF engaged between 2000 and 2005 (see 6D Farm Corp. v Carr, 63 AD3d 903 [2009]).

In August 2009, upon remittal, the plaintiff moved for leave to enter a default judgment against BDF and Mrs. Benedict, asserting that they had not filed an answer to the fifth cause of action. BDF and Mrs. Benedict cross-moved for leave to file a late answer. During the pendency of the motions, Mrs. Benedict, for whom a guardian had been appointed, died. Consequently, the Supreme Court denied the motion and the cross motion, with leave to renew, and transferred the case to the Surrogate's Court, Westchester County. In August 2011, the Supreme Court vacated its prior order, directed the Surrogate's Court to return the case to the Supreme Court, and again denied the motion and cross motion, with leave to renew.

Almost one year later, in August 2012, attorney Patrick J. Carr, on behalf of BDF and the estate of Mrs. Benedict (hereinafter the estate), moved for leave to serve and file a late answer on their behalf, for leave to serve and file an amended answer to assert a counterclaim alleging fraud against the plaintiff's attorneys, and for summary judgment authorizing the estate to wind up BDF's business and fixing the amounts due from 6D to BDF and from BDF to the estate. The plaintiff cross-moved for leave to enter a default judgment and to authorize 6D to wind up BDF's affairs. In an order dated January 24, 2013, the Supreme Court, inter alia, granted that branch of the plaintiff's cross-motion which was to authorize 6D alone to wind up BDF's business.

Subsequently, the plaintiff attempted unsuccessfully to obtain BDF's books, records, and assets from Carr and Mrs. Benedict's former guardian. The plaintiff thereafter moved, inter alia, to hold Carr and the guardian in contempt, to impose sanctions upon them, and to direct them to turn over any books, records, and assets in their possession to 6D. In an order dated May 8, 2013, the Supreme Court, inter alia, granted that branch of the plaintiff's motion which was to direct Carr and the guardian to turn over the books, records, and assets of BDF to 6D.

Under Partnership Law § 68, "[u]nless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; provided, however, that any partner, his [or her] legal representative, or his [or her] assignee, upon cause shown, may obtain winding up by the court." Further, on the death of a partner, "his [or her] right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his [or her] right in such property vests in his [or her] legal representative" (Partnership Law § 51 [2] [d]; see Silberfeld v Swiss Bank Corp., 273 App Div 686, 688 [1948], affd 298 NY 776 [1948]). The representative of a deceased partner is not entitled to participate in or interfere with the continuation of or winding up of partnership business by the surviving partner (see Fogel v Neiman, 288 AD2d 429, 430 [2001]).

Based on this authority, the Supreme Court correctly determined that, upon Mrs. Benedict's death, 6D was the only entity with a legal right to wind up BDF's business affairs because 6D was the only surviving partner. Moreover, upon Mrs. Benedict's death, the estate had no legal right to BDF's assets, books, records, or business. Rather, all rights to such property vested im-

mediately in 6D, which was the only entity authorized to wind up BDF's business.

In addition, the Supreme Court correctly denied the appellants leave to serve and file a late answer. CPLR 3012 (d) provides that, "[u]pon the application of a party, the court may extend the time to appear or plead, or compel the acceptance of a pleading untimely served, upon such terms as may be just and upon a showing of reasonable excuse for delay or default." Upon an application for an extension of time under CPLR 3012 (d), the court may exercise "its discretion in the interests of justice to excuse delay or default resulting from law office failure" (CPLR 2005). However, any claim of law office failure must be supported by a detailed and credible explanation of the default at issue (*see Lugauer v Forest City Ratner Co.*, 44 AD3d 829, 830 [2007]; *see also People's United Bank v Latini Tuxedo Mgt., LLC*, 95 AD3d 1285, 1286 [2012]). A conclusory, undetailed, and uncorroborated allegation of law office failure does not amount to a reasonable excuse (*see Forward Door of N.Y., Inc. v Forlader*, 41 AD3d 535 [2007]; *Piton v Cribb*, 38 AD3d 741, 742 [2007]; *Elite Limousine Plus v Allcity Ins. Co.*, 266 AD2d 259, 259 [1999]).

Here, as the Supreme Court correctly noted, Carr provided no explanation as to why the appellants failed to serve and file a timely answer to the fifth cause of action or to move in a timely fashion to renew their prior motion for leave to serve and file a late answer. In fact, there was an unexplained delay of one year between the retransfer of the case to the Supreme Court and the motion for leave to serve and file a late answer on behalf of the appellants. Carr's unsubstantiated and conclusory claims were insufficient to establish a reasonable excuse for the failure of BDF and the estate to serve and file an answer.

The appellants' remaining contentions are without merit. Leventhal, J.P., Hall, Austin and Roman, JJ., concur.